This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Robin Tate has appealed from the order of the Summit County Court of Common Pleas, Juvenile Division, which terminated the parental rights of Appellant, Willie Alfred Lee, and John Doe to the minor child J.L.T.; denied the motion of relative Ruth Tuttle for legal custody; and placed the child in the permanent custody of Summit County Children's Services Board ("CSB"). This Court affirms.
 I {¶ 2} Appellant is the biological mother of two children, J.L.T., born on January 5, 2000, and K.T., born May 31, 2001. Only the custody of J.L.T. is presently before this Court. Permanent custody of K.T. was awarded to CSB on May 31, 2002 in a separate action. At the time of J.L.T.'s birth, Appellant was married to Robert Tate, but Appellant subsequently named Mr. Lee as the biological father of J.L.T.
 {¶ 3} While both Mr. Lee and Ms. Tuttle participated in the proceedings below, neither has appealed from the judgment of the trial court. Only Appellant has brought an appeal and her appeal is grounded on the failure of the trial court to award custody to Mr. Lee.
 {¶ 4} CSB initially became involved with J.L.T. shortly after his birth when the hospital notified CSB that the child and Appellant both tested positive for cocaine. CSB permitted the child to remain in the home under a child safety plan, which required that Mr. Tate would be the main caretaker and that the child would never be alone with Appellant.
 {¶ 5} In May 2000, CSB filed a complaint, alleging that J.L.T. was neglected and dependent. The child was placed in emergency temporary custody and has remained in CSB's custody since that time. Following an adjudicatory hearing, the trial court found the child to be neglected. That judgment was reversed by this Court. See In re: Joseph Lee Tate (Sept. 12, 2001), 9th Dist. No. 20417.
 {¶ 6} Shortly after issuance of the appellate decision, on September 18, 2001, CSB refiled the action, again alleging that J.L.T. was neglected and dependent. At that time, Mr. Tate, Appellant's husband and the generally-presumed father of the minor child, was deceased, having committed suicide on May 2, 2001. In addition, Appellant could not be notified of the decision because her whereabouts were unknown. Appellant did not have a regular address and she had not kept in contact with CSB. J.L.T. remained, therefore, in the temporary custody of CSB and in the physical care of a foster family.
 {¶ 7} In its complaint, CSB alleged that J.L.T. lacked adequate parental care because of the faults, habits and/or mental or physical condition of Appellant. CSB claimed that Appellant had a history of substance abuse and that both J.L.T. and K.T. tested positive for cocaine when they were born. CSB also alleged that Appellant had neglected or refused to provide J.L.T. with safe and appropriate care. In addition, CSB claimed Appellant had not made herself available to contact for visitations with the child.
 {¶ 8} The trial court granted emergency custody and set the case for a shelter care hearing. At the shelter care hearing, only the CSB caseworker and prosecutor were present. Appellant did not personally appear despite efforts to notify her and obtain her presence. Her whereabouts continued to be unknown and the supposed father was deceased. The magistrate found probable cause to continue the child in the emergency temporary custody of CSB. Counsel was appointed to represent Appellant and an attorney/guardian ad litem was appointed for the child. Supervised visitation, as recommended by CSB, was ordered, provided Appellant complied with substance abuse treatment.
 {¶ 9} The adjudicatory hearing was continued once because Appellant was being detained on federal bank fraud charges. Ultimately, adjudicatory and dispositional hearings were held. Appellant was not present for either hearing, though her counsel was present. The father of the child was indicated as being deceased. The magistrate entered a decision, pursuant to agreement of the parties, that the child was dependent and dismissed the allegation of neglect. The magistrate also ordered a disposition of temporary custody to CSB.
 {¶ 10} On February 20, 2002, CSB filed a motion for permanent custody. The prosecutor requested service by publication because the whereabouts of Appellant were unknown and attempted service by regular mail, certified mail, and personal service had failed. Appellant had not given CSB information regarding a current address or a means of contacting her.
 {¶ 11} The hearing on the motion for permanent custody was set for April 4, 2002. One week prior to the scheduled hearing, on March 27, 2002, relatives Ruth Tuttle and Shari Karl moved to assume legal custody of J.L.T. and K.T. Each sought custody of one child and proposed a plan under which the children would spend time together frequently. Ms. Tuttle initially sought custody of only J.L.T., but later stated that she would accept custody of both children. Appellant, through counsel, stated that she was supportive of Ms. Tuttle's efforts and sought a continuance so that CSB could investigate this possible placement. The permanent custody hearing was continued to May 3, 2002.
 {¶ 12} On May 3, 2002, the day of the scheduled hearing, Appellant reported that Mr. Tate was not the biological father of J.L.T., but rather that one Willie Alfred Lee was the father of the child. Consequently, CSB could not proceed on its motion. Thereupon, the trial court ordered CSB to file a new motion for permanent custody, ordered that counsel may be appointed for the alleged father, and continued the hearing to July 12, 2002.
 {¶ 13} The hearing on CSB's motion for permanent custody and Ms. Tuttle's motion for legal custody took place on July 12, 2002. All relevant parties were present except Appellant, though proper service had been obtained and her counsel was present.
 {¶ 14} Mr. Lee testified briefly at the hearing. He denied that he was the father of the child, stated that he had not had unprotected intercourse with Appellant, and stated that Appellant had never told him he was the father of the child. Mr. Lee requested a paternity test in order to establish that he was not the biological father. Mr. Lee admitted that when he was first informed of his alleged paternity, he declared that he had no interest in the child, but stated in court, that if he is determined to be the father, he would "step up and take my father obligation." Mr. Lee further testified that he had never seen the child.
 {¶ 15} The court granted Mr. Lee's request for a paternity test, and all parties agreed to allow the results of the test into evidence when they were obtained. No objection was entered by any party to proceeding with the custody hearing in the interim. The genetic testing was performed on September 26, 2002. The report indicated that there was a 99.93 per cent degree of probability that Mr. Lee was the father of J.L.T. The report was filed with the court on November 1, 2002.
 {¶ 16} Thereafter, on November 14, 2002, the trial court entered judgment, terminating the parental rights of Appellant, Mr. Lee, and John Doe; denying the motion of Ms. Tuttle for legal custody of the child; and granting CSB's motion for permanent custody.
 {¶ 17} No appeal was taken by Mr. Lee or Ms. Tuttle. The present appeal was taken by Appellant, who has assigned two errors for review. The two assignments of error will be considered together.
 II Assignment of Error Number One
"THE COURT'S GRANTING OF PERMANENT CUSTODY TO THE SUMMIT COUNTY CHILDREN'S SERVICES BOARD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PER [R.C. 2151.41.4]."
 Assignment of Error Number Two
"THE TRIAL COURT ABUSED ITS DISCRETION UNDER [R.C. 2151.41.4] IN PLACING THE CHILD IN THE PERMANENT CUSTODY OF THE SUMMIT COUNTY CHILDREN'S SERVICES BOARD."
 {¶ 18} Through these two assignments of error, Appellant has essentially asserted that the trial court erred in awarding permanent custody to CSB because it should have awarded custody to Mr. Lee. She has argued that the judgment of the trial court is against the weight of the evidence and reflects an abuse of discretion. Appellant has maintained that she has standing to complain of error against a nonappealing party because she was prejudiced to the extent the ruling of the trial court affected her residual parental rights. Assuming, without deciding, that Appellant has standing to assert error on behalf of Mr. Lee, we find that Appellant's two assignments of error are without merit.
 {¶ 19} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, this Court uses the same standard of review as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 20} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 21} Determinations regarding child custody matters rest within the sound discretion of the trial court. Miller v. Miller (1988),37 Ohio St.3d 71, 74. A juvenile court's discretion in determining the permanent custody of a child should be given a great deal of respect because of the nature of the proceeding and the impact on the lives of the people involved. In re Awkal (1994), 95 Ohio App.3d 309, 316.
 {¶ 22} As a result, an appellate court should not reverse a trial court's decision regarding matters of child custody absent an abuse of discretion. Davis v. Flickinger (1997), 77 Ohio St.3d 415, 416-17. An abuse of discretion is more than an error of law or judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. Consequently, when applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge. Berk v. Mathews (1990), 53 Ohio St.3d 161, 169.
 {¶ 23} The termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994), 96 Ohio App.3d 619, 624. Before a juvenile court may grant permanent custody of a child to a children services agency, it must apply a two-prong test measured by clear and convincing evidence. First, the court must determine that it is in the best interest of the child to be placed in the permanent custody of the petitioning agency, based on an analysis under R.C. 2151.41.4(D). See R.C. 2151.41.4(B)(1).
 {¶ 24} In making a determination as to the best interest of the child, the trial court must:
 "consider all relevant factors, including, but not limited, to the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and our-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.41.4(D).
 {¶ 25} Second, the court must also determine that the child has been abandoned, orphaned, resided in the temporary custody of a child services agency for twelve out of twenty-two consecutive months, or cannot be placed with either parent within a reasonable time or should not be placed with the child's parents, based on an analysis under R.C. 2151.41.4(E). See R.C. 2151.41.4(B)(1); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 26} We first consider Appellant's claim that the trial court erred in determining that the child could not or should not be placed with Mr. Lee within a reasonable time. In support of this determination, the trial court found that Mr. Lee demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so or has shown an unwillingness to provide an adequate permanent home for the child. See R.C. 2515.414(E)(4). Appellant has argued that the finding of the trial court is meaningless because Mr. Lee was not aware before or during the trial that he was, in fact, the biological father of the child. Upon careful review of the record, we find the argument to be without merit.
 {¶ 27} The record indicates that Mr. Lee had actual knowledge of the paternity allegation by mid-May 2002, two months before the July 12, 2002 hearing. At that time, Mr. Lee's reaction to the allegation was to deny that he was the father and state that he did not wish any involvement with the child. During the subsequent two months, Mr. Lee had the opportunity to make contact with the child, but he made no effort at all in that regard. Also during that time period, Mr. Lee made no effort to determine paternity, nor did he contact CSB to even inquire regarding the child.
 {¶ 28} Mr. Lee did appear at the hearing on CSB's motion for permanent custody on July 12, 2002 with counsel, and requested genetic testing in order to prove that he was "not the father." When the question arose as to how to proceed, all parties agreed to go forward with the hearing and permit the genetic testing results to be admitted subsequent to the hearing. No objection was entered by either Mr. Lee or Appellant's attorney to going forward with the hearing without the test results, thereby waiving any error in that regard.
 {¶ 29} During the hearing, Mr. Lee did not produce any evidence demonstrating that he affirmatively wished to have custody of the child. He stated merely, that if he were found to be the biological father, he would accept his "father obligation." Even after the test results were obtained, neither Mr. Lee nor Appellant's attorney made any effort to reopen the proceedings or produce any evidence to demonstrate that Mr. Lee had a commitment to the child.
 {¶ 30} Moreover, in the context of this case, Mr. Lee's counseled failure to appeal from the judgment of the juvenile court granting permanent custody to CSB does nothing to dissuade this Court from the conclusion that the decision of the trial court was supported by the manifest weight of the evidence and that such judgment was a sound exercise of discretion.
 {¶ 31} Appellant has next complained that no evidence was presented regarding Mr. Lee's ability to provide for the child. However, Mr. Lee's ability to provide for the child is not relevant to his commitment to the child.
 {¶ 32} Appellant has also asserted error in the trial court's finding that the child had been in the temporary custody of a children services agency for twelve or more months of a consecutive twenty-two month period. Appellant has argued that a portion of that time should not contribute to the calculation because it was attributable to a prior adjudication which was reversed by this Court. The trial court's finding in this regard, however, is not necessary to a determination of unsuitability under R.C. 2151.41.4(B)(1), in light of the alternative finding that the child could not or should not be placed with Mr. Lee within a reasonable time. See R.C. 2515.414(B)(1)(a).
 {¶ 33} Next, Appellant has argued that the custodial history of the child was improperly considered for purposes of determining the best interest of the child. The record demonstrates that the child had, in fact, been in the temporary custody of CSB and living with the same foster family since he was approximately four months old and for over two years as of the time of the July 2002 hearing in this matter. Notwithstanding any argument that a portion of this time can be credited to a previously reversed decision and is arguably not relevant to a finding under R.C. 2151.41.4(B)(1)(d), the fact remains that the child has been living with a foster family for nearly his entire life and that this reflects his custodial history. At the time of the child's initial removal from the home, neither Appellant nor the maternal grandmother offered the names of any relatives who might care for the child. Moreover, there has been little visitation or contact by any member of the child's family during this entire period. J.L.T. has reportedly bonded with the only family he has really known. The trial court did not err in recognizing the actual custodial history of the child in making a determination regarding the best interest of the child. See R.C. 2151.41.4(D)(3).
 {¶ 34} Appellant has next contended that the trial court erred in finding that the interaction and interrelationship of the child with Mr. Lee was poor. She has challenged that finding because of Mr. Lee's lack of awareness of the child and because once he did become aware of the child, he appeared in court and stated his desire to have custody of the child if he were found to be the biological father. As stated above, however, Mr. Lee made no effort at all to interact or relate with the child either before the hearing or after the results of the genetic testing became available. Further, Mr. Lee's direct testimony in the hearing began with a denial that he was the biological father of the child and concluded with his request for genetic testing to prove the fact that he was not the father. We do not find the conclusion of the trial court on this point to be erroneous.
 {¶ 35} Appellant has challenged the report of the guardian ad litem in that he did not state that it was in the best interest of the child not to be placed in Mr. Lee's care. However, the guardian ad litem was very clear in stating his belief that the best interest of the child was that he should be placed in the permanent custody of CSB.
 {¶ 36} To the extent that this Court is also obliged to consider the ruling of the trial court as it relates directly to the termination of the parental rights of Appellant, we find the following. In its judgment entry, the trial court found (1) that Appellant abandoned the child; (2) that the child could not or should not be placed with Appellant within a reasonable time; (3) that Appellant failed to remedy the conditions that caused the child to be placed outside the home; (4) that Appellant is unable to provide an adequate home for the child due to severe chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency; and (5) that Appellant demonstrated a lack of commitment toward the child by failing to support, visit or communicate with him or otherwise has shown an unwillingness to provide an adequate home for the child.
 {¶ 37} In terms of the best interest of the child, the trial court found that the interaction and interrelationship between the child and Appellant was poor, the child had been in the custody of CSB since May 2000, the guardian ad litem stated his belief that the best interest of the child was that he be placed in the permanent custody of CSB, and that the child needed a legally secure permanent placement which could only be achieved through a grant of permanent custody to the agency.
 {¶ 38} Evidence before the trial court demonstrated that Appellant had no stable housing; had a history of substance abuse; failed to comply with the case plan requirements of counseling, drug screens, and parenting classes; had her parental rights terminated as to another child; and failed to regularly visit J.L.T. Appellant's last visit with the child was nearly a year before the permanent custody hearing. Appellant has not challenged any of the findings by the trial court in regard to herself. This Court finds that the conclusions of the trial court in regard to Appellant are supported by the evidence presented.
 {¶ 39} We conclude that the trial court had substantial evidence before it from which it could conclude that parental rights should be terminated as to Appellant and Mr. Lee, and that J.L.T. should be placed in the permanent custody of CSB. The trial court did not abuse its discretion in so finding. Furthermore, the record indicates that the weight of the evidence also supports this conclusion.
 III {¶ 40} In the end, this case presents a mother who scarcely participated in the proceedings below, asserting the claim of an alleged father who has not bothered to appeal. Ultimately, the question before this Court requires concern for the minor child and how best to bring a sense of security and permanence to him. In this case, and on these facts, perhaps the best the court system can do is let the child have finality.
 {¶ 41} Appellant's two assignments of error are overruled. The judgment of the trial court is affirmed.